We will now move to the final case on the argument calendar today, King v. City of Henderson. I believe counsel have 15 minutes aside in this case. Counsel, for the appellant, whenever you are ready. Thank you, Your Honor. Robert Spretnak here on behalf of the plaintiff appellant, Daniel King. I've never in my career been told that I'm not speaking loud enough to hear. I don't think this will be the first time. Well, you know, counsel, in that regard, you and I share a trick. I thank you very much, not only for holding oral argument, but coming here to Las Vegas for the oral argument. Welcome to our city. We're here on an appeal necessitated from the failure of the district court to properly apply summary judgment standards that have been the law of the land since the Celotex trilogy in 1986. Counsel, let me get you directly to one of the issues that concerns me about your position. I did not see in the record evidence of any similarly situated employee of a different color who was given preferential treatment. Is there such evidence? And if so, where? Okay. I'll first point out that that applies to the discrimination claims, the first and the third claims, the first claim being federal law, third claim being state law. And that, with regard to the retaliation claim, we've got a kind of different... We'll get there. We'll get there. Okay. With regard to the discrimination claim, the issue with the comparators is not really an issue in this. That's one way that the evidence can develop on this, but this is a case where... Well, it's one way to deal with the question of whether the fact that he was, the assertion by the defense that he was reassigned because of his insubordination and his unwillingness to support the new chief and his differing use of force philosophy, if that was pretextual. And it's certainly one way to determine if it's pretextual. Well, the example then with those particular issues. First of all, with regard to the alleged insubordination, that was invented for this litigation. The Bristol-Ellington's hearing on the grievance in his decision, he specifically said the removal from training was because this was a temporary assignment that had run its course after six years. He specifically said this was not disciplinary, and in fact... Well, insubordination doesn't always result in discipline. It depends on how bad it is and whether... Well, if it's so bad to remove him from the training assignment, it should be so bad... But it wasn't the only thing. It seemed clear to me from this record that your client did not share the views of and was not supportive of the new chief. That's the allegation. And in fact, actually, if you look at the... Well, there are facts to support that allegation in the record. Well, the facts to support, number one, is all of the other people in the training unit were trained in the same forced sciences technique as Daniel King. So to single him out as somehow being unsupportive because... What we're aware in the record is, maybe you can point us to your best evidence in the record, that Mr. King was removed from the training unit based on colorism. Okay. That goes from the fact that at that first meeting back on March 12, 2018, with Chief Watson... Can you point me to where in the record I should be finding what you're talking about? Okay. Well, the best part of the record for the kind of timeline-type issues would be Daniel King's... Your best evidence that Mr. King was removed from the training unit based on your allegation that he was removed due to colorism. Where is that? I warned you that the chief was watching you. That is in the mouth of Michael Denning, Wendy DeMose. So, counsel, here's my similar question. Okay. I can see an argument that the answer they gave was pretextual. I can see an argument the chief absolutely didn't like your client. I can see that she wanted other people on her team, and maybe these are good policing reasons. Maybe these are bad policing reasons. And for the jury to decide which? Well, no, because it's not a federal discrimination violation if she gets rid of him because she doesn't like him. I would agree. What I'm having trouble seeing here is, other than your client's opinion that she did this because of his color, where in the record is anything from which we could conclude that the reason she did this is because of his color? It's clear your client has said he thinks that, but where is there any evidence that it was because of color as opposed to a myriad of other things, including she just doesn't like him? Well, in Officer King's affidavit, we go in with his life experience of having to deal with color-based discrimination from other African Americans throughout his life. But I don't think there's any dispute that African Americans are discriminated against and have been, that people of a particular color can be discriminated against. But the fact that there is discrimination, where does that get us to the chief's motivation, where's your client's color? Is just historical discrimination, in your view, enough to get past summary judgment? Well, it's historical discrimination and his life experience being in that. I will concede we do not have direct evidence of color-based discrimination. There's nothing in the record from Letitia Watson, from the other side even. She's been silent because she's also sued the city of Henderson for discriminatory termination. And actually, there's some very interesting things in the briefing for summary judgment in her case where they've taken totally contrary positions. Well, we can only go what's on the record here. Well, it's part of the public record, though, that's summary judgment. And I had a related question, which does concern the retaliation claim. And that is, is there evidence that the specific officers who made the reassignment knew about the complaint that your client had made about colorism? Yes. I mean, he made the complaint to Sergeant Borden. That's his chain of command. And according to the policy of the company, I'm sorry, of the city, and the policy is set forth. Who was responsible for his reassignment? We believe the record will show that it was Letitia Watson. Michael Dunning claims it was him. But he also said while he's demoting her, I warned you the chief was watching you. So there's a specific link to the chief. Okay. So what is your point about policy that you think raises an inference that a transferring official had to have known or could have known? Yeah, the equal employment policy for one and the harassment-free work policy another, it would be at the excerpts of record 166 and on 171, where it says specifically, in furtherance of this policy and the city's prohibition on discrimination, harassment, and retaliation, all supervisory employees who witness such conduct or otherwise become aware of any allegations or complaints. But you have to show us factually in this record how the person who did the demoting and said it comes from the chief personally knew of the complaint of colorism. Well, we're raising the inference that Borden had to have reported it up the chain of command. We didn't get a confession from him in the record. What did he say? There's nothing from him in the record. So there's no confession from him. So was he deposed? No. But the policy specifically says it's their obligation. So the inference is that it was reported up the chain of command. And in the briefing on the Letitia Watson case, they said – Is there anything in the record that explains that for some reason he was unavailable for a deposition? No. That's – I believe he's still employed by the city. So, I mean, you could have deposed him and said, did you report this? And if he said no, you could have said, well, what about the policy? But you didn't do that. You are correct. You are correct. I failed to do that. But the policy is very explicit on that point. And the repeated warnings after that March 12th meeting where Officer King told Sergeant Borden that this is what colorism looks like, that he keeps hearing, the chief is watching you. Why is the chief watching him all the time? We don't know from this record. That's my problem. I know – I guess it comes back to Judge Bennett's question. I mean, something bad may happen to me, and I may in my head attribute it to being female, but it may be because I live in Oregon and this person hates Oregonians. I would have no way to know that. And so I guess I'm having difficulty seeing evidence beyond your client's internal belief, which is genuine. I'm not questioning the genuineness of it, but it's not evidence of the other person's motivation. No, that's incorrect. We do have evidence in the record because everything changed for Officer King after that March 12th meeting, whether it's because Letitia Watson saw his skin color and didn't like it. Or she saw his presentation and didn't like it, which is what she said. Or is it because he complained that this is what colorism looks like? Because at that point, everything changed. He was a superstar in the department, a nationally respected expert on police use of force. Well, everything changed after the meeting. Correct. And right after the meeting was the statement about this is what colorism looks like. Well, I understand that's his statement, but even from your view of the facts, there are things that he said at the meeting which probably wouldn't have delighted the chief. I would disagree strongly with that. He was answering her questions very politely, and her questions were extremely hostile, like you got this from a friend on the Internet. It was a use of force expert that he had dealt with on very high-profile use of force cases. I'm not quarreling with you that in the light most favorable to you, the chief's questions showed hostility. But your client's views that he expressed, I think, did not seem to jive with the chief's substantive views. I would say that's a question for a jury to decide, and we could lose on that point. The jury may well find that Officer King brought that in on his own. I neglected at the start to say I wanted to reserve five minutes, but I'm already way past that. I do have one more question, though, and that has to do with the evidence that your client basically expressed lots of public concern about the chief and was vocal and opinionated, according to the evidence, about being unsupportive of the chief's view of the use of force and other philosophical issues. That's a one-way argument from the other side that Officer King disagrees with. There's evidence to support it, and so the question is, in the face of that evidence, what counter-evidence is there that it's really about skin color and not about failure publicly to support a new chief? He was never confronted that he wasn't adequately supporting the new chief. I didn't ask you if he was confronted. I've asked you if there was counter-evidence to show that his skin color is the real reason and not all of these other acts that he engaged in. I'll give you a perfect example of why there's other evidence out there that is beyond just that he was this lone wolf going against the chief. In Letitia Watson's lawsuit, she names the union as stirring up a campaign against her. That is not in this record. She never mentions it. Is that in this record? I have mentioned that in the pleadings, a reference to the case number, and Letitia Watson v. City of Henderson is part of the public record, so it's fair game to bring up. And Danny King is not mentioned once in her complaint. I did not see, or I don't recall seeing in the briefing, an argument that the record in this case includes the record in the other case. Is that your assertion? Are we supposed to incorporate the entire record of another case into this record? I would say it is within your rights to look at cases in the public record. Much as I can cite cases in the public record, they're not necessarily in the record. But normally that's not done for facts. Normally that's done for other reasons, but not for the underlying facts to support your claim. Are you asking us to incorporate those as factual matter in this record? And if so, what opportunity has the district court had to look at that? I would say that that creates inferences that support the allegations. What creates inferences? That Officer King was not the driving force behind the filing of a huge number of complaints against Letitia Watson during her very brief, very turbulent tenure with the City of Henderson. She does not even allege in her complaint anything about him. She blames the union. And that's consistent with the statements in Officer King's affidavit. So it's kind of evidence in support of our inferences, but the inferences can be drawn just from his affidavit. And the district court failed to do that. They fully credited the arguments of counsel. All right. We'll give you some time for rebuttal. Oh, okay. Thank you, Your Honor. Thank you. Good morning. May it please the court. I'm Whitney Sellert. I represent the City of Henderson in this case. The City of Henderson, which you might already appreciate, is the second largest city in the state of Nevada. It basically comprises the southern half of this valley and this greater metropolitan area. Fundamentally, this case involves a police officer who regards himself as such an expert on use of force policy and doctrine that the only possible explanation that he could ever conceive or fathom for anyone expressing any skepticism or criticism about his opinions when it comes to work product or work product on use of force matters was some form of illegal discrimination. In this case, the notion that the city's brand-new African-American female chief of police somehow disliked him because his skin color, according to him, is a lighter shade than hers. I'm sorry. Does the city dispute that? You know, I don't know that anyone's ever really looked at or considered it. Has the city disputed it? No, no, I don't. And it's been addressed at different levels during discovery because, you know, when asked, well, what evidence do you have to support this opinion, he has none but his opinion. Well, I mean, he talked about what in his view were many instances in his past of discrimination based on color. So that's not nothing, right? I would say it's not probative evidence. It's not probative that, for example, according to the plaintiff, and I mean that may or may not be true, but according to plaintiff, he has suffered discrimination because of his color, including from African-Americans like one of the defendants in this case. You're not asking us to discount that as evidence at summary judgment, are you? No, but I don't think it's probative evidence from which any reasonable juror could infer racial animus against Chief Watson simply for having the audacity to question a controversial incident protocol that he was proposing. Well, one of the things that plaintiff argued was one of the things that was said to him was you don't know your place, and that plaintiff testified that that has been a historical way of expressing discriminatory animus toward African-Americans. Do you dispute that that's probative evidence? I don't dispute that that might be historically accurate, but I do dispute that it's probative evidence in this case because that kind of comment is equally applicable in military situations or paramilitary situations like police departments where you have a very specific and concrete chain of command that has to be followed. And in this case, Mr. King, when I deposed him, admitted it in fact was not his place to question the administration's philosophies and policies when it came to use of force or any other changes or its decisions in the case. So you don't know your place could mean that someone is not following what are clearly chain of command rules in military-type organizations like police departments. That's one thing it could mean. When you have an objectively nondiscriminatory basis for a statement like that, it's not reasonable to infer discriminatory animus. And in the case that you're citing, which is different from, temporarily different by a period of six months and a completely different individual from the March incident. So it's important to keep clear that although he pegs all of his discriminatory animus arguments to this one five-minute meeting he had with Chief Watson in March of 2018 where they discussed briefly his protocol for how to communicate with the public following a controversial officer-involved shooting. That's one incidence. The one that you're talking about happened six months later where Deputy Chief Denning is telling him you don't know your place following a meeting the day before. I believe that in his, again I may be misremembering this, but I believe in his affidavit he says it sounded like that Denning was channeling the chief in some way or using her words. But other than his assumption that that's true, is there any evidence beyond his affidavit or elsewhere in the affidavit to show or raise an inference that he was channeling the chief or using her words? I mean, there's none. Even if you were to assume on summary judgment as you should that his attribution of that statement to Deputy Chief Denning is true, even though Deputy Chief Denning disputes that, the notion that he would be removing Mr. King from his temporary assignment to the training unit... I want to ask you about that. I'm taking you in a slightly different direction. So is it possible to remove an officer in the department from a special assignment for cause but for that removal to not constitute a disciplinary action? Absolutely. If you look at the policy itself, these temporary assignments are discretionary and they're based on department need as determined by the person in charge of that department. In this case, once Mr. King made it abundantly clear that he had a deep disagreement and was openly hostile with the new administration, would not keep his negative feelings from his trainees, Deputy Chief Denning determined that he was no longer a good fit because it's in Mr. King has never explained how having an officer who's so openly hostile to the new administration would be consistent with department needs such as to stay in that position. Is there evidence in the record in the light most favorable to the plaintiff that at any time he was told that there was a disciplinary problem? None. So there's nothing in the record where anyone indicated ever to the plaintiff that there had been a disciplinary action or that this was disciplinary or that this was as a result of misconduct? No. The city has always maintained from the beginning that once Mr. King acknowledged to Deputy Chief Denning that he wasn't going to keep his negative feelings about the new administration to himself, he was no longer a good fit for that training assignment. So why not remove him from the training unit but without making that a disciplinary action? They did not make it a disciplinary action. It never was. When Mr. King filed a grievance asserting that it was, the city denied it on that basis. It's not disciplinary. Now, it's not to say it couldn't have been disciplinary in the world of possibilities. There could certainly be an instance where an officer acted in such a way, maybe committed a crime even, that would constitute a grounds for disciplinary action and removal. But that's not this case. This case, he was just removed from the training assignment. He was returned to patrol with no demotion, no loss of pay or grade. I thought there was an economic impact. There was a, I guess there's, when you're in the training unit, there's one special pay component that comes with that, but that's not part of your pay. And I'm not arguing that, I'm not arguing, to be clear, that removing him from the training unit is not an adverse employment action. Okay, that's where I was going. Those are different things. You know, in the Venn diagram sense of the word, you have a disciplinary action and then you have adverse employment actions. So you concede, though, that that is an adverse employment action within the meaning of the disciplinary action? It fails because, at the prima facie level, because there's zero evidence of discriminatory animus, and it fails at the pretext level of analysis because there's zero evidence that Deputy Chief Denning would not have removed any other officer from that same temporary training assignment if they were just as openly hostile and unsupportive. That brings me to a question that I asked opposing counsel. The one thing we learned from today, among other things, is that apparently there were a lot of other people who were very unhappy with the same chief. So is there any evidence that anyone of a different color than this plaintiff was given better treatment by similarly complaining about the chief? There's no evidence of disparate treatment in this case. There's no comparator, first of all, in the record. If you go all the way back to the March incident where Mr. King claims that he had two other members of his unit present and that Chief Watson's tone towards him was different than it was towards them, neither of them were discussing something as controversial as how we communicate with the public following an officer-involved shooting. The subject matter was completely different. And with respect to that matter, her comments, where did you get this? You got this off the Internet? So you got this from a friend? As it turns out, the answer to all those questions were yes, when I deposed Mr. King. But neither of those other two officers were addressing the same subject matter. So they're not similarly situated. So you can't take just a change in tone as some inference of discriminatory animus when the statements themselves are objectively, you know, discrimination neutral. The same is true for the removal. Counsel, the district court stated in her order that plaintiffs, and this is I think at ER 13 at page 8 of her order, but plaintiffs' only hostile work environment claim prior to his demotion was unrelated to color discrimination and made to appear. Was that a correct statement of the facts? I believe it is. When Deputy Chief Denning, it is and it is also a bit of a red herring in a sense. It is accurate because there was no evidence that prior to Deputy Chief Denning removing Mr. King from his temporary training assignment that he had engaged in any protected activity. That allegation was later added by him, I think, in his second amended complaint and then amplified in his declaration to say that, oh, well, during this meeting in July I had with Lieutenant Hartshorne, even though I originally alleged in all my contemporaneous notes state that all I told Lieutenant Hartshorne was that I was going to file a hostile work environment complaint against Captain Burns for slandering my name about the way Mr. King investigated the use of force incident involving Officer Steyer. That was his original complaint. He said in his second amended complaint to avoid dismissal, he said, oh, yeah, and I mentioned that there was colorism all the way back from March. So he says that, but even though he says that, if you look carefully at his deposition and the evidence, there's no evidence and there's no allegation that that information ever made it to Deputy Chief Denning or that Deputy Chief Denning was in any way aware of any alleged protected activity when he removed him. Who was the peer that the district court was referring to? I think she's talking about Lieutenant Hartshorne, who was one of the individuals who worked in the training unit with Mr. King. And there's no evidence in the record that any kind of colorism complaint was made to him? Nothing other than Mr. King's statement in his second amended complaint and then in his declaration, which Frank, I also. So other than him putting it in his declaration, there's no summary judgment evidence? There's no summary judgment evidence of him raising colorism to Lieutenant Hartshorne in July? Correct. I thought he made, he said, I'm confused. In the declaration, the plaintiff says that he made the comment. Oh, wait, that's a different comment. Oh, no, he made a comment to Sergeant Borden and Officer, I can't pronounce it, Thubot. Thubot. Thubot, I apologize, that this is what colorism looks like. So he made the complaint or comment to Borden and Thubot. So why doesn't that count? Isn't Sergeant Borden a peer? He is a peer. Okay. But he never, to be clear, Mr. King never made that allegation until his declaration. And one thing that Judge Dorsey didn't. Well, why does that matter? It's here. It does matter. Potentially, I think it does matter. And on De Novo Review, you can decide this. In our reply brief, we argued that that was a sham declaration and ought to be stricken because this 38-page, 130-paragraph declaration was inconsistent with and contradicted his sworn deposition testimony that he gave over two days. Did this particular statement contradict the deposition? That he told in March. That he made his comment in March to Borden and Thubot. I believe so. So what did he say in his deposition about his comment and to whom he said it? As I recall from his deposition, what he said following, what he testified to was that following the March incident, he walked out and said to those guys, did I say something wrong? Did I do something wrong? And they said no. And that was that. There was no allegation. He says that in the declaration also in paragraph 42. Thank you. But in the deposition, did he state that he had made the comment to someone, this is what colorism looks like or something like that? I do not recall that. I believe, and this is why we moved to strike the declaration as a sham declaration under the sham declaration doctrine, which has been repeatedly recognized by the circuit and the Supreme Court, because it is not okay to try to create or manufacture an issue of fact by inserting a declaration at the summary judgment phase that contradicts deposition. You can amplify, though, if it's not contradictory. That's why I'm trying to pinpoint what you think is contradictory as opposed to amplification or addition. Because if the right questions weren't asked or whatever or the person didn't answer completely, they can add to it. They can't contradict it. I understand. They can add to it. And I would like to think I was very thorough in saying what exactly happened, what did you do next, you know, give me the details. I, over two days, gave him those opportunities, which is why if you look at our reply brief to the summary judgment motion, you'll see the details of why we wanted that stricken. But at the end of the day, even if, assuming that you consider the declaration and you consider the allegation, the fact of the matter is there's no evidence that even if he told that to his peers, that his peers communicated it to any decision maker or any decision maker was aware of that comment or his feelings in that regard before they took any of the actions that are issued before you. All right. Do you have any closing statements? Just, Your Honor, that with the failure of the prima facie case and I think zero evidence of pretext, the district court absolutely got it right here. And the deeper you look into that record on de novo review, the more you'll be convinced that that is correct, and I'd ask that you uphold. All right. Thank you. Counsel for plaintiff, we'll give you three minutes for your rebuttal. Thank you, Your Honor. The affidavit is really the functional equivalent of direct testimony. I was there for the two days of Danny King's deposition, and Mr. Sellert's deposition style is to cut off witnesses in the middle of an answer and ask a totally different question. This is absolutely irrelevant to our decision and not helpful. Okay. But I would like to know your view of whether at the deposition the plaintiff said that he made the comment to anyone, this is what colorism looks like. Is that in the deposition? I don't believe so. His answer was cut off, and he never said is that everything. He was never asked if that was everything that happened. He didn't say nobody ever said that. He just didn't talk about it at all? He just was not given the opportunity to finish everything that had happened there. And that's clearly the protected activity. And the inference that can be drawn from the protected activity is once he made that statement or once Letitia Watson saw his skin color, we're not sure which because it both happened on March 12th, everything changed for Officer King from that point forward. So it's not just an unsupported allegation by Officer King. It is that he observed everything with his career changing. Now, this whole thing about the city denying that the demotion was disciplinary, if that's the case, then all of their argument about the insubordination and the failure to support the chief are meaningless. Why is that so? You don't have to discipline someone to decide that they're not being supportive of the new administration and you don't want them training people. That isn't necessarily disciplinary in nature, is it? It's disciplinary in nature if you're removing somebody from an assignment because of it. That's an adverse action, but it's not necessarily disciplinary. Those are two different concepts. And that's what Bristol Ellington, that's the narrow path he was trying to walk down. But clearly they thought there was something wrong with the behavior. And the whole point of the disciplinary system is so he can grieve, so he can present his evidence. He was never given that opportunity. Isn't it most appropriate to have people in a training unit who are fully supportive of the administration, the chief, for the new people to be brought into a culture of support and not criticism? And he was not undermining the chief. That's their position, but that is not a full area of the evidence. He had complained about the chief, which, again, if the chief is coming after him because of his skin color, that's retaliation. And the retaliation case is very strong here. The discrimination, I think, is also strong, but the retaliation is particularly strong because he engaged in protected activity and he suddenly was on a pathway of being written up a lot. Now, they've got their legitimate non-discriminatory reason, but then it moves to evidence of pretext. And we've submitted the evidence that this was actually pretextual. And the fact that he wasn't disciplined, drawing the inferences most in favor of Officer King, is that the evidence is that that was pretextual in nature. Do you have a closing statement? Yes, we ask this matter be reversed and remanded back for further proceedings. There's just too much contradictory evidence in the record that the district court should not have disregarded. The district court failed to draw inferences in favor of Officer King, especially with regard to the retaliation claim. All right, thank you. Thank you, counsel. Thank you, Your Honor. We thank counsel for their arguments, and the case just argued will be submitted. With that, we are adjourned for the day. All rise.
judges: GRABER, BENNETT, DESAI